**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **TERRANCE REECE AND** | ) | |
| **LESLIE ROHER-REECE,** | ) | **Case No. 11-51044** |
| | ) | |
| **Debtors.** | ) | |

**MEMORANDUM OPINION**

At Harrisonburg in said District this 20th day of August, 2013:

The question before this Court is whether the United States Trustee (UST) may proceed on her Motion to Dismiss pursuant to 11 U.S.C. §§ 707(b) and (a) when the case was not originally filed under chapter 7. The debtors seek dismissal of the UST's motion because, according to the debtors: (1) section 707(b) does not apply to cases converted to chapter 7; and (2) section 707(a) is inapplicable to dismiss a case for "bad faith." The Court disagrees with the debtors. For the reasons described below, the Court concludes a case originally filed under chapter 13 and subsequently converted to chapter 7 is subject to 11 U.S.C. § 707(b). The Court further concludes that cause to dismiss a case pursuant to 11 U.S.C. § 707(a) includes bad faith. The UST may proceed and be heard on her motion to dismiss under section 707.

**FINDINGS OF FACT & PROCEDURAL HISTORY**

Terrance Reece and Leslie Roher-Reece filed a chapter 13 petition on July 20, 2011. The following day, they filed a motion to quash a garnishment held by credit card servicer FIA Card Services for a debt of approximately $5,000. The Court entered an order quashing the garnishment on July 22, 2011. The debtors filed three chapter 13 plans. None was confirmed. The chapter 13 trustee objected to confirmation on grounds that the proposed plan was not filed in good faith pursuant to 11 U.S.C. § 1325(a)(3) and that the proposed plan did not provide all of the debtors' projected disposable income during the applicable commitment period to payments to unsecured

1

creditors pursuant to 11 U.S.C. § 1325(b). Specifically, the trustee objected to deductions claimed on Form 22C lines 30, 31, 32, 43, 45, 55, and 60. In addition, the trustee protested that the female debtor's income was under-reported. The hearings on the objections were continued by consent, and the Court did not address the substance of the chapter 13 trustee's objections. The hearings were continued in part to permit the debtors to first address other concerns: namely the objection filed by Bank of America to the valuation of its collateral, the debtors' objections to certain proofs of claim, and an action to strip off a wholly unsecured second mortgage from the debtors' home. Although the debtors resolved these other objections and obtained an order avoiding the wholly unsecured second mortgage, the chapter 13 trustee's objections regarding disposable income and good faith were not adjudicated or resolved. At a continued confirmation hearing held on September 5, 2012, more than twelve months after the petition date, the debtors and the chapter 13 trustee were no closer to resolving the disposable income and good faith objections than at the first hearing. The Court then ordered the debtors to file a response or comply with the trustee's objection by September 28, 2012. *In re Reece*, No. 11-51044 (Bankr. W.D. Va. September 12, 2012), ECF No. 60.[1] At approximately 11:50 P.M. on September 28, the deadline for providing the chapter 13 trustee with the requested documents or a response as to why not, the debtors docketed a notice of conversion to chapter 7 citing section 1307(a) and Rule 1017(f). The morning of the next business day, on October 1, 2012, the Court entered an order, without notice or hearing, converting the case to chapter 7.

The UST timely filed a notice as required by 11 U.S.C. § 704(b)(1)(A) that the chapter 7 case was presumed to be an abuse under section 707. Subsequently, the UST filed a motion, and an amended motion, to dismiss the case pursuant to sections 707(a) and 707(b). The debtors oppose the

---

[1] The trustee's objection requested: additional proof of income for 2011 – 2012, including income from coaching, first paystubs from new job, and an explanation of why the bank deposits for June and July did not appear to match the average monthly income reported; proof to support deductions on CMI lines 30, 31, 32 (term life), 43 (school), 45 (charity), 55 (retirement), and line 60 (summer and reduced pay); amend schedule D to reflect the date of the Ford Focus loan and its model year; amend schedule F to reflect account numbers for all listed creditors; amend schedule I to list occupation and length of time in occupation; amend schedule J; and amend CMI/B22 line 2.

2

motion and seek dismissal of the UST's Motion.[2] The debtors contend that the UST cannot proceed on its motion because the law is inapplicable to these factual circumstances. The parties presented oral argument and submitted briefs.

The following facts are uncontested:

(1) Mr. and Mrs. Reece filed an original chapter 13 petition;

(2) Mr. and Mrs. Reece filed a chapter 13 plan, plus two amended plans. No plan was confirmed;

(3) The chapter 13 trustee maintained a disposable income objection to each of Mr. and Mrs. Reece's chapter 13 plans, and the disposable income objection was not resolved nor adjudicated before the case was converted;

(4) The debtors achieved the following results in chapter 13: elimination of a garnishment, disallowance of two unsecured claims, disallowance of the secured status of one claim,[3] and avoidance of a wholly unsecured second mortgage;[4]

(5) The debtors converted to chapter 7;

(6) UST is seeking dismissal under section 707(b) alleging an abuse, or in the alternative, under section 707(a) alleging "bad faith" as cause.

## CONCLUSIONS OF LAW

The question before the Court is whether the Court must dismiss the UST's motion as flawed because: (1) the debtors did not originally "file under" chapter 7 and, therefore, are immune from 707(b) actions; and (2) "bad faith" cannot be cause to dismiss a chapter 7 case under 707(a). The Court will address the arguments.

---

[2] *See In re Reece,* No. 11-51044 (Bankr. W.D. Va. 2011), ECF Nos. 81 (Jan. 16, 2013) and 88 (Feb. 28, 2013).

[3] The Court sustained by default the objection to claim #10 as a secured claim but allowed the claim to be treated as an unsecured claim in the chapter 13 case. *See Id.* at ECF No. 41.

[4] The order granting the avoidance of the lien conditioned the relief upon the completion of the chapter 13 plan. *See Id.* at ECF No. 45.

**A. May a court dismiss a case as an abuse under 11 U.S.C. § 707(b) if the case was not originally filed under Chapter 7?**

The UST has alleged that the case should be dismissed under section 707(b). The debtors have argued that the Court cannot, as a matter of law, dismiss this case pursuant to section 707(b) because the case was not originally filed under chapter 7.

Section 707(b) states in relevant part: "[a]fter notice and a hearing, the court, on its own motion or on a motion by the United States Trustee . . . may dismiss a case *filed by an individual debtor under this chapter* whose debts are primarily consumer debts . . . ." 11 U.S.C. § 707(b)(1) (emphasis added). Courts are divided over whether a case that has been converted to chapter 7 can be dismissed under section 707(b). That split is adroitly summarized by the Bankruptcy Court for the Middle District of Florida in *In re Layton*[5] as a division between, on the one hand, the "hybrid arguments" and "common sense approach;" and on the other hand, the "plain language" approach. Both the "hybrid arguments" and "common sense approach" conclude section 707(b) applies to cases converted to chapter 7. The "plain language" approach concludes section 707(b) does not apply to cases converted to chapter 7.

The "hybrid arguments," as coined by Judge Williamson, apply one of two analytical methods. The first method uses the grammatical rule of last antecedent[6] to conclude that the phrase "case filed" is modified by "by individual debtor" rather than "under this chapter." The second method relies upon non-bankruptcy sources to define terms not defined under the Code[7] in order to conclude the term "filed" incorporates a voluntary conversion into chapter 7. The "common sense

---

[5] *In re Layton*, 480 B.R. 392, 394 – 97 (Bankr. M.D. Fla. 2012) (Williamson, J.).

[6] "The first hybrid argument leading to the 'common sense' result is the grammatical rule of last antecedent. Under this rule, '[a] limiting clause or phrase ordinarily is to be read as modifying only the noun or phrase it immediately follows.'" *Id.*

[7] "[S]ome courts utilizing the hybrid approach have re-defined the word 'filed' to mean 'to enter (e.g., a legal document) on public official record.' Under this expansive definition, a case is 'filed' under chapter 7 when a motion to convert is filed. As a result, cases are deemed to be filed under chapter 7 for § 707(b) purposes when they are converted." *Id.*

approach," as described by Judge Williamson, considers legislative intent and a desire to avoid absurd results as sufficient justification to conclude that section 707(b) must apply to cases converted to chapter 7. On the other hand, the "plain language" approach simply finds the language is unambiguous and has a single meaning: that section 707(b) applies only to cases originally filed under chapter 7.

Four years ago, Judge Ross W. Krumm, now retired, of this Court adopted the "plain language" view described above. *McDow v. Dudley (In re Dudley)*, 405 B.R. 790, 792 – 98 (Bankr. W.D. Va. 2009). Since that time, no other judge of this Court appears to have addressed the issue. The Court in *Dudley* acknowledged that it was adopting the minority view. This Court has reconsidered its position. This Court concludes the "plain language approach" as described by *Dudley* and *Layton* is not an accurate reflection of the plain language of the statute.[8] This Court believes that the so-called "hybrid arguments" and the "common sense approach," defined by Judge Williamson, reflect a more correct reading of the statute.

    1. <u>The Plain Language Approach</u>

The "plain language approach" previously adopted by this Court is based on the application of certain canons of statutory interpretation. *Dudley,* 405 B.R. at 794 – 95. One of the first canons mentioned by the Court in *Dudley* is "when the meaning of the statute is in dispute, the analysis begins with the statute itself." *Id*. at 792. This Court agrees. In a case requiring statutory construction, the Court must look at the language of the statute itself. *McNeill v. United States*, 131 S. Ct. 2218, 2221 (2011) (quoting *Robinson v. Shell Oil Co*., 519 U.S. 337 (1997)). In doing so, however, a Court must look at the language of the statute itself in the specific context in which the language is used. *Id*. The inquiry into statutory construction ceases if the statutory language is

---

[8]     *See In re Davis,* 480 B.R. 478, 480 (Bankr. S.D. Ga. 2013) (concluding that the plain language of the statute comports with the UST's interpretation of the statute that 707(b) applies to cases converted to chapter 7).

5

unambiguous and the statutory scheme is coherent and consistent. *Sebelius v. Cloer*, 133 S. Ct. 1886, 1895 (U.S. 2013) (*quoting Barnhart v. Sigmon Coal Co.,* 534 U.S. 438 (2002).

    a.    <u>The statutory language</u>

The meaning of the phrase "filed by an individual debtor under this chapter" is the dispute; in particular, whether "filed" is modified by "by an individual debtor" or "under this chapter." In examining the language at issue - *filed by an individual debtor under this chapter* - the terms "individual" and "chapter" are fairly certain. Although "individual" is not defined by the Bankruptcy Code, generally the term has been applied to a natural person.[9] "Chapter" refers to the Chapter of Title 11 of the United States Code under which a bankruptcy proceeds. While the meaning of the phrase "under this chapter" may be in dispute depending on whether it is read as modified by the word "filed," there is no dispute that to be subject to section 707(b), the individual debtor currently must be proceeding under chapter 7. In other words, no Court would attempt to apply the provisions of section 707(b) to a debtor who is not currently before the Court in a chapter 7 case. Thus, simply considering the ordinary meaning and statutory context, section 707(b) applies, at a minimum, to natural persons who are currently proceeding under chapter 7. Furthermore, section 707(b) can only apply to voluntary cases regardless of the exact meaning of "filed." Voluntary cases are commenced by the filing of a petition by a "debtor."[10] In contrast, an involuntary case is not commenced by a debtor.[11] The operative language in the question before this Court is "filed by an individual debtor under this chapter." An "individual debtor" cannot file an involuntary case and,

---

[9]     11 U.S.C. § 101(41) defines a person as including individuals as well as partnerships and corporations. Simply by deduction, an individual may not include a non-natural entity. *See generally Toibb v. Radloff*, 501 U.S. 157 (1991) (discussing eligibility for chapter 11 as including individuals not engaged in business).

[10]     11 U.S.C. § 301 (voluntary case commenced by the filing of a petition by an entity that may be a debtor); 11 U.S.C. § 101(13) (defining "debtor"); 11 U.S.C. § 109 (designating eligibility to be a debtor).

[11]     11 U.S.C. § 303 (the involuntary case is commenced by the filing of a petition by entities that hold a claim); 11 U.S.C. § 101(5) (defining "claim").

therefore, section 707(b) cannot apply to involuntary cases.[12] The Court concludes from this review of the language within its specific context and definitions that section 707(b) can only apply to voluntary cases of natural persons who are currently proceeding under chapter 7. We are still left with the question of whether "case filed" is modified by "under this chapter" or "by an individual debtor."

*Dudley*, in applying the "plain language approach" focused on the verb "filed" and held that "filed" must be modified by "under this chapter" for two particular reasons: 1) to hold otherwise would render the phrase "under this chapter" superfluous; and 2) interpreting "under this chapter" as modifying "filed" is consistent with the Fourth Circuit's ruling in *Branigan v. Bateman*.[13]

      i.      <u>Is the phrase "under this chapter" superfluous?</u>

The lynchpin of the Dudley decision rests on the canon of construction avoiding superfluity. *Dudley*, 405 B.R. at 794. According to *Dudley,* finding section 707(b) applicable to cases converted to chapter 7 is tantamount to reading the language of section 707(b) as applying to all individual debtors in chapter 7, and renders the words "under this chapter" superfluous. *See Dudley*, 405 B.R. at 794 (reasoning that if section 707(b) applies to all individuals currently before the court in chapter 7, then the phrase "under this chapter" is superfluous unless it is intended to modify "filed"). Along these lines, some courts have supported *Dudley*'s conclusion that "under this chapter" is superfluous if it modifies "individual debtor" and not "filed" because section 103(b) of the Bankruptcy Code already limits section 707(b) to cases currently in chapter 7.[14] *See Layton*, 480 B.R. at 395; *Dudley,* 405 B.R. at 794; 11 U.S.C. §103(b). This line of reasoning is not persuasive.

---

[12] This makes sense if the intent of section 707(b) is in part to address abuse. The nature of an involuntary procedure to compel a debtor into liquidation is in stark contrast to the notion of a voluntary, conscious decision by a debtor to seek a discharge without payment.

[13] 515 F.3d 272 (4th Cir. 2008).

[14] 11 U.S.C. § 103(b) provides "Subchapters I and II of chapter 7 of this title apply only in a case under such chapter."

7

Simply because a portion of statutory text could have been worded more tersely does not mean that a statute does not mean what it says. *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1078 (2011). In this case, the mere fact that the words "under this chapter" appear as redundant or surplusage based on the existence of section 103(b) does not dictate that "filed" must, therefore, be modified by "under this chapter," rather than "by an individual debtor." The words "under this chapter" simply confirm that in order for the court to consider whether to dismiss a case pursuant to section 707(b), the case must be currently under chapter 7. The argument that "under this chapter" is surplusage could apply equally to sections 1112(b), 1208(b), 1307(b) and 707(a), each of which contains the exact phrase "under this chapter," even though section 103 simultaneously limits those sections to their respective chapters. The more persuasive argument, therefore, is that the phrase "filed by an individual debtor," which is contained in section 707(b) but not sections 1112, 1208, 1307 or 707(a), must intentionally distinguish section 707(b) from its sister dismissal provisions.

    ii. <u>Is the conclusion mandated by the Fourth Circuit's decision in *Bateman*?</u>

*Dudley* noted that its conclusion was consistent with the Fourth Circuit's use of the non-superfluity canon when examining the phrase "filed under" in the context of section 1328 of the Bankruptcy Code. *Id*. (citing *Bateman*, 515 F.3d at 277). Although *Dudley* may be consistent with *Bateman*, this does not mean that *Bateman* necessarily controls the issue at hand. In *Bateman*, the Fourth Circuit considered the impact of the phrase "filed under" contained in section 1328(f) for purposes of a discharge in a case filed under chapter 7 and converted to chapter 13. In this case and in *Dudley*, the question is not whether "filed under" means just "under." It is true that *Bateman* applied the same statutory construction rules as *Dudley* to the same words, "filed" and "under." Yet, the words "filed" and "under" in *Bateman* were dealt with as a phrase, "filed under," and with good reason, as the words are necessary to differentiate time restraints for discharge for certain repeat debtors. In this case, the question is not a computation contingent upon the bankruptcy chapters, but whether this Court's authority to dismiss a case "under this chapter" pursuant to section 707(b) is

8

fictional unless the case was originally "filed under" chapter 7.  The question arises solely because the statutory authority to "dismiss a case . . . under this chapter" contains the intervening phrase "filed by an individual debtor."

As explained above, the limit of what the Court can note with certainty about section 707(b) based on the statutory language and defined terms is that section 707(b) only applies to natural persons who are currently in chapter 7 in a voluntary case.  It remains unanswered whether the phrase "case filed" is modified by "by an individual debtor" or "under this chapter;" or for that matter whether the phrase "filed by an individual debtor" modifies the word "case" or is itself modified by the phrase "under this chapter."  This debate over the meaning of the phrase "filed by an individual debtor" has led courts to:  1) consider the phrase within the context and statutory scheme, and 2) examine the intent of drafters of the statute in order to apply the statute consistently with the intention of the drafters and in a manner that would avoid absurd results.  Thus, courts have, as Judge Williamson coined, applied hybrid arguments and a common sense approach.

    2.        The Common Sense Approach

        a.    The hybrid arguments

In the *Layton* decision, Judge Williamson referred to the "doctrine of last antecedent" as a "hybrid argument."  The Fourth Circuit applied the doctrine of last antecedent in *Bateman*.  The doctrine is a grammatical rule, rather than a rule of statutory construction, to assist a court in determining the meaning of the words in a statute.  *See Bateman,* 515 F.3d at 277 – 78.  According to the rule, "a limiting phrase or clause  . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Id.* at 277.  Yet, as the Court explained in *In re Lassiter*,[15] the rule of last antecedent does not definitely answer the question of which noun or phrase is modified in the particular terms in section 707(b).  Under the rule, the noun "case" could be modified by the phrase "filed by an individual debtor" that immediately follows it, and the noun "debtor" could be

---

[15]    2011 WL 2039363 (Oct. 19, 2012) (Huennekens, J).

9

modified by the phrase "under this chapter" that immediately follows it.  On the other hand, the phrase "case filed" could be modified by "by an individual debtor under this chapter" that immediately follows it.  Consequently, the Court cannot rely entirely on the rule of last antecedent to determine the meaning of the phrase "filed by an individual debtor under this chapter."

When faced with this impasse, the Court in *Lassiter* turned to the statutory context and scheme for consistency and coherence.  Judge Huennekens examined identical phrases in other provisions of the Code. As he explained, the fact that "filed by an individual debtor" does not appear in sections 1112, 1208 and 1307 demonstrates that Congress intended for those words to a have a particular impact in section 707(b). *Id.* at *3.  This Court agrees.  This Court believes that impact is to limit section 707(b) to voluntary cases of individual debtors.  Hence, the language is not superfluous when section 707(b) is applied to converted cases.  The statutory text, context, and scheme subject only voluntary cases of individual debtors to section 707(b), as distinguished from cases of non-individuals or involuntary cases.  Interpreting section 707(b) as applying to cases originally filed by individual debtors under a chapter other than chapter 7, but subsequently converted to chapter 7, is indeed consistent with *Bateman*.

Furthermore, the combination of sections 348 and 301 of the Bankruptcy Code provide support for finding that cases converted from a different chapter to chapter 7 are "deemed filed" under chapter 7.  Section 348 provides that when a case converts from one chapter to another chapter of the Bankruptcy Code, the conversion constitutes an order for relief in the chapter into which the case is converted; the date for the filing of the petition, commencement of the case, and order for relief, however, all remain the same. 11 U.S.C. § 348.  Under this section, the filing date is unchanged, but the case is deemed to be filed under the chapter to which the case is converted. *Lassiter*, 2011 WL 2039363 at *3 (citing *McDow v. Capers (In re Capers)*, 347 B.R. 169, 171-72 (Bankr. D. S.C. 2006)); s*ee Fokkena v. Chapman (In re Chapman)*, 447 B.R. 250, 253 (BAP 8th Cir. 2011), *McDow v. Sours (In re Sours)*, 350 B.R. 261, 268 (Bankr. E.D. Va. 2006).  Thus, the language

10

of section 707(b) may apply equally to cases originally filed under chapter 13 and converted to chapter 7. *Lassister*, 2011 WL 2039363 at *3.

> b. <u>Application of the statute consistent with the intention of the drafters</u>

Legislative changes made to section 707(b) support the conclusion that section 707(b) is not limited to cases originally filed under chapter 7. The language "filed by an individual debtor" dates from the Bankruptcy Amendments and Federal Judgeship Act of 1984. Congress did not change this phrase when they altered other parts of 707(b) with the BAPCPA amendments in 2005.[16] *See In re Davis*, 489 B.R. 478, 483 (Bankr. S.D. Ga. 2013) (citing 6 Collier on Bankruptcy, ¶707.LH (16th ed. rev. 2012)). Pre-BAPCPA, bankruptcy courts consistently applied section 707(b) to cases converted from other chapters. *Id*. The Supreme Court has advised that "Pre-BAPCPA bankruptcy practice is telling because we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning,* ___ U.S. ___, 130 S.Ct. 2464, 2473 (2010). This Court finds no clear indication that Congress intended such a departure, particularly because Congress left the language unchanged. As explained above, the operative language has not changed since it was enacted in 1984 and, since that time, courts routinely have applied section 707(b) to converted cases. *See In re Davis*, 489 B.R. at 483. Absent an articulable reason to change course from pre-BAPCPA precedent, this Court will decline to do so.

Additionally the aim of BAPCPA supports the application of section 707(b) to all chapter 7 cases. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-32 (2010) (noting that the purpose of BAPCPA was to "to correct perceived abuses of the bankruptcy system"). The "heart" of BAPCPA is the "means test" which was "intended to ensure that debtors will repay creditors the maximum amount the debtor can afford." *Johnson v. Zimmer*, 686 F.3d 224, 236 (4th Cir. 2012), <u>cert. denied,</u> 133 S. Ct. 846, 184 L. Ed. 2d 655 (U.S. 2013). Section 707(b) contains the

---

[16] "BAPCPA" refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. It is sometimes referred to as the 2005 Bankruptcy Reform Legislation.

means test as a threshold examination to establish a presumption that a chapter 7 discharge may be an abuse. Adopting an interpretation of section 707(b) that allows certain debtors to evade the means test would be antithetical to the purposes of BAPCPA.

For the reasons set forth above, this Court concludes section 707(b) applies to cases converted to chapter 7. The Court will permit the UST to advance its motion under section 707(b).

**B. Is "bad faith" cause to dismiss a Chapter 7 case under 11 U.S.C. § 707(a)?**

The UST has alleged in the alternative that Mr. and Mrs. Reece's case should be dismissed under section 707(a). The debtors have argued that the Court cannot, as a matter of law, dismiss this case pursuant to section 707(a) because "bad faith" is not "cause" to dismiss a chapter 7 case.

Section 707(a) of the Bankruptcy Code reads:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

The list of three examples of cause contained in section 707(a) is non-exclusive. *McDow v. Smith*, 295 B.R. 69, 74 (E.D. Va. 2003). When the criteria for "cause" are not exclusive, the Court may exercise discretion to determine cause. The Court's exercise of discretion is informed by Bankruptcy Code Section 105(a). Section 105(a) provides the Court with authority to exercise discretion to prevent abuses of process and enforce compliance with Court orders. Section 105(a) provides that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The UST has alleged that the debtors incurred significant and unnecessary debt in contemplation of filing bankruptcy, filed with the Court

12

inaccurate or incomplete schedules and statements, did not fully disclose all income, claimed unreasonable or unnecessary expenses, and filed chapter 13 plans that were not proposed in good faith. These allegations, if true, could be "cause" under section 707(a) if the conduct alleged was an abuse of process or was facilitated by non-compliance with Court orders in the absence of inadvertence or excusable neglect. *See Smith*, 295 B.R. at 76 – 77 (concluding that a debtor's bad acts or omissions may, in the totality of the circumstances, constitute cause for dismissal under 707(a) in the discretion of the bankruptcy court). Therefore, this Court finds that the UST has asserted legal grounds to seek dismissal under section 707(a) in this case sufficient to proceed to a trial.

The debtors urge this Court to follow the Ninth Circuit's holding in *In re Padilla*.[17] In *Padilla*, the Ninth Circuit distinguished a liquidation case from a reorganization case and found that a liquidation case could not be subject to the same criteria for cause for dismissal. 222 F.3d at 1192 – 94. The Ninth Circuit began with the premise that because good faith is a criteria for plan confirmation under a reorganization, it follows that lack of good faith may be sufficient criteria to dispose of a reorganization case. On the other hand, a liquidation case encompasses a different relationship among, and duty between, the debtor and his creditors. According to this reasoning, good faith is not relevant to a liquidation case, and, therefore, lack of good faith, should not be grounds to dismiss a liquidation case. In addition, the Ninth Circuit rationalized that because other remedies are available for bad conduct, such as denial of discharge, bad conduct should not be sufficient grounds to dismiss a chapter 7 case. *Id.* The Ninth Circuit's holding fails to acknowledge that the dismissal of a chapter 11 case for bad faith is not contingent upon the chapter 11 debtor seeking to reorganize, rather than to liquidate under that chapter.[18] Moreover, the Ninth Circuit's

---

[17]    222 F.3d 1184 (9th Cir. 2000).

[18]    *Compare* 11 U.S.C. § 1112 *with* 11 U.S.C. § 1123(a)(5)(D). *See also Smith*, 295 B.R. 69, 76 (E.D. Va. 2003).

reasoning in *Padilla*, that an alternate remedy for bad conduct precludes dismissal for bad conduct, is reminiscent of the dissent in the United States Supreme Court ruling, *Marama v. Massachusetts*, 549 U.S. 365 (2007).[19] *Marama* was decided subsequent to *Padilla*. The majority in *Marama* recognized that bad faith uniformly has been accepted as grounds to dismiss a reorganization case, and ultimately found that bad faith may be grounds to limit a conversion to a reorganization case, even when the Code appears to provide an "absolute right" to convert from chapter 7 to chapter 13. *Marama,* 549 U.S. 369, 372 – 75.  More importantly, the Supreme Court acknowledged that bad conduct is bad faith.  The Court did not, however, define what specific conduct qualifies as bad faith sufficient to permit dismissal or denial of conversion.  *Id.* at 374 (noting without defining bad faith, that a debtor's conduct sufficient to qualify as bad faith must "in fact, be atypical").  The Supreme Court noted that the Bankruptcy Court may exercise its authority under section 105 of the Code to take action to "prevent an abuse of process" and, therefore, deny a conversion if the effect is to prevent a debtor from engaging in procedural shenanigans to shield his misconduct or to avoid the futility of an inappropriate conversion.  *Id*. at 375.  Mr. and Mrs. Reece argue that the application of the Supreme Court's holding in *Marama* should be limited merely to conversions from chapter 7 to chapter 13.  The Court disagrees.  The Supreme Court's opinion supports a bankruptcy court's ability to employ section 105 and apply an appropriate remedy in the face of egregious conduct.  *See generally, In re Matthews*, 2013 WL 1385221 (Bankr. E.D. Va. April 3, 2013) (concluding that the Bankruptcy Court has the power to dismiss a case for bad faith under section 707 when presented with evidence of debtor misconduct).  The debtors are correct that a court should not confuse remedies, but likewise, a court should not deny an action solely because the party may have an

---

[19] The dissent criticized the majority for permitting a bankruptcy court to limit the debtor's apparent legislative right to convert from liquidation to chapter 13 when the debtor demonstrated bad conduct rising to the level of bad faith. The dissent noted that denial of discharge under chapter 7 was an available remedy, and if this remedy was insufficient, Congress should invent the cure.  549 U.S. at 383. The majority found that Congress had invented the cure through the power provided to bankruptcy courts under section 105 of the Bankruptcy Code. 549 U.S. at 375.

alternate remedy. Dismissal may be the least painful consequence for a debtor when contrasted with a denial of discharge and, yet, may be appropriate in light of particular misconduct or abuse of process.[20] At this juncture, the UST has questioned the accuracy of the debtors' disclosures regarding their income and expenses, their purpose in seeking conversion to chapter 7, and their justification for the delays in the case. The Court must construe the allegations as true at this juncture, and, therefore, in light of allegations of dishonesty regarding disclosures, the Court will permit the UST to proceed to be heard on its motion seeking dismissal for bad faith.

## CONCLUSION

Based on the merits of the arguments, the Court finds that legal grounds exist for the UST to proceed on her motion to dismiss this case pursuant to sections 707(a) and 707(b) of the Bankruptcy Code. The fact that the case was converted is immaterial. The debtors' motion to dismiss is denied. A separate order will effectuate the findings of this opinion.

Date: August 20, 2013

Rebecca B. Connelly
U. S. Bankruptcy Judge

---

[20] Indeed, not all debtors will be seeking a discharge. *See e.g.* 11 U.S.C. §§ 727(a)(8) and (9) (discharge not available if prior discharge received within a specified time frame) and § 727(a)(1) (only available to individual debtors). If the only sanction available to address bad conduct was denial of discharge, the Court would be left without a remedy to address such conduct when the debtor was not eligible for a discharge. The Court believes Congress recognized the need to permit a bankruptcy court authority to exercise discretion to provide appropriate remedies consistent with the statute when it enacted section 105.